## UTAH BLACK MARBLE CO. v. AMERICAN MARBLE AND ONYX CO. et al.

No. 2465. Decided June 4, 1913 (133 Pac. 472).

1. APPEAL AND ERROR—REVIEW—FINDINGS. A finding upon sharply conflicting evidence will not be disturbed on appeal, where it depended largely upon the determination of the credibility of the witnesses. (Page 71.)

2. CORPORATIONS—ACTS OF CORPORATORS—KNOWLEDGE IMPUTED TO CORPORATION. Where the locators of a mining claim, while stockholders and directors in a corporation to which they had transferred their claim, relocated the claim, the corporation paying the expense, but the location being taken in the names of the individuals, and organized a second corporation to which they transferred the new location, the second corporation cannot claim the location as a *bona fide* purchaser, for it appearing that the locators were the principal stockholders therein, and that the corporation had been organized as a cover to shield them from the consequences of their breach of trust, the knowledge of the incorporators will be imputed to the corporation. (Page 73.)

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Action by the Utah Black Marble Company against the American Marble and Onyx Company and others.

Judgment for plaintiff. Defendant named appeals.

AFFIRMED.

*Cheney, Jensen* and *Holman,* for appellant.

*Dey, Hoppaugh* and *Fabian,* for respondent.

STRAUP, J.

The plaintiff by this action seeks to have adjudged that the defendants hold certain placer mining claims in trust for it, and prays that the defendants be required to convey them to it. The plaintiff had judgment. From a portion of it the defendant American Marble & Onyx Company appeals.

The evidence shows:

The defendants Cornelius, Thor, and Oliver Cederstrom are brothers; the defendant Dolly Cederstrom is their sister; the defendant Ellen Cederstrom their mother; the defendant Eiseman their brother-in-law. Prior to July, 1909, the defendants, in Utah county, located marble deposits, one claim as a placer claim called Marble Placer, and four claims as lode claims called the Lone Star, the Spring View, the Rockefeller, and the Thelma. On July 20, 1909, the defendants Oliver, Thor, and Cornelius Cederstrom and Eiseman, with others, organized the plaintiff corporation, and on the same day, together with the other locators Ellen and Dolly Cederstrom, conveyed to it the lode claims and the placer claim. The capital stock was 1,000,000 shares— 400,000, treasury stock; and 600,000 issued, of which the Cederstroms and Eiseman held 550,000 shares. Oliver, Cornelius, and Thor Cederstrom and Eiseman comprised four out of six members of the board of directors. Stock of the corporation was sold to others who became interested in the corporation. Efforts were made to raise something like $30,000 for development and operative purposes. In September, 1909, it was concluded that the deposits could not be acquired and held under lode locations; hence, it was determined to locate them as placer claims. The plaintiff adduced considerable testimony to show that the Cederstroms and Eiseman agreed to locate the deposits covered by the lode claims as placer claims, and to make such locations on

behalf of and for the benefit of the plaintiff. This the Cederstroms and Eiseman denied. The fact, however, is that they while directors of the plaintiff corporation, and on the 22d day of September, 1909, made three locations of the deposits known as placer claim No. 1, located by Oliver, Cornelius, and Thor Cederstrom and Eiseman; placer claim No. 2 located by the same locators; placer claim No. 3 located by Cornelius, Thor, Ellen, and Dolly Cederstrom; and that the expenses of such locations were paid by the plaintiff. Controversies and differences soon arose between the Cederstroms and Eiseman on the one side and other stockholders of the plaintiff corporation on the other. Demands were made of the Cederstroms and Eiseman that they convey the placer locations to the plaintiff. According to the evidence of the plaintiff, they at first did not refuse, admitted that the placer locations had been made for the benefit of the plaintiff, and stated that they had intended to convey such claims to it, but later asserted that "the company," the plaintiff corporation, had not treated them right. The Cederstroms and Eiseman ceased to be directors on the 3d day of August, 1910. But before they ceased to be such directors, and after the trouble had arisen and the placer locations had been made, the Cederstroms became instrumental in organizing the defendant corporation, the American Marble & Onyx Company, which was organized by them in April, 1910. That company also had a capital stock of 1,000,000 shares; 400,000 in the treasury, and 600,000 issued, of which the Cederstroms held 470,000 shares. On the same day of the organization of the defendant corporation the locators of placer No. 3, Cornelius, Thor, Ellen, and Dolly Cederstrom, all incorporators of the defendant corporation, conveyed that claim to that corporation. The title of placer claims Nos. 1 and 2 at the time of the trial still remained in the name of the locators, Oliver, Cornelius, and Thor Cederstrom, and Eiseman. The court found and adjudged that they held placer claims Nos. 1 and 2, and the defendant corporation placer claim No. 3, in trust for the plaintiff, and ordered a conveyance of them to it. The defendant corporation only

has appealed. So the only claim involved on the appeal is placer claim No. 3.

What principally divides the parties is this: (1) The plaintiff contends that the placer locations Nos. 1, 2, and 3 were made by the Cederstroms and Eiseman for the benefit of the plaintiff. This the defendants deny. (2) That the placer claims as located covered all the ground and deposits located and covered by the lode claims. This the defendants also deny, and claim that the lode claims lie to the east of the placer claims, and that the latter cover ground and deposits not covered by and not included within the lode claims; and that this was especially true with respect to placer claim No. 3. Much evidence was adduced by the parties in support of their respective contentions. The court found the facts as contended for by the plaintiff. The appellant does not contend that the findings in such particular are wholly unsupported. What it chiefly contends is that the facts as claimed by the appellant were established by witnesses in its behalf, the Cederstroms and Eiseman, who actually had made the locations of both the lode and the placer claims, and who, for that reason, had better means of knowledge as to the exact location of the claims than the witnesses for the plaintiff, none of whom had assisted in the making of any of the locations. Whatever may be claimed for that is substantially met by the counterclaim that the testimony of the Cederstroms and Eiseman in such particular was prompted by bad faith and personal interests. The evidence also is in conflict as to this proposition: The plaintiff claims that there is substantially but one vein or ledge of marble which extends in a northerly and southerly direction, and that the lode claims were located lengthwise along that ledge, first the Lone Star, then to the south of that the Spring View, then the Rockefeller, then the Thelma. Evidence was adduced on behalf of the defendants tending to show that there are two ledges, a west and an east ledge, running in a northerly and southerly direction, and that the lode claims are located lengthwise along the east ledge. But there is but little or no conflict in the evidence that the west ledge

is the only valuable ledge, and is a continuous vein of good marble, and can readily be traced for some miles by the outcroppings and exposure of marble, and that the east ledge, as compared with the west ledge, is practically of no value. The placer claims were located along the west ledge. If, therefore, the lode claims were located along that ledge as contended for by the plaintiff and as found by the court, then are they included within the placer locations. If they are to the east thereof, as contended for by the defendants, then are they wholly without the placer locations. Surveys were made by both parties. According to a survey made by a surveyor of the plaintiff the lode claims were located along the west ledge, and are within the placer locations. According to surveys by surveyors of the defendants, the lode claims are to the east, and wholly without the placer locations. It was, in effect, stipulated that, as shown by plaintiff's survey and as testified to by its witnesses, the lode claims were located on the west ledge, and are within the placer locations. The surveys themselves are not of much consequence. The corner monuments or stakes of the lode claims were missing when the surveys were made. The surveyors in making the surveys depended much on what those who pretended to have knowledge of the corners told them. The Thelma and the south half of the Rockefeller lode claims, if located along the west ledge, are within placer claim No. 3. We think there is good and sufficient evidence to show that the discovery monuments and the posted notices of those lode claims were, as found by the court, erected and posted on the west ledge and on ground covered by placer claim No. 3. Of course, there is a direct conflict as to that; but we cannot say the finding is against the manifest or greater weight of the evidence. The determination of the fact, whichever way it may be found, is almost wholly dependent upon the credibility of the witnesses and the weight to be given their testimony. Charges and countercharges are made of shifting stakes, locations of discovery monuments, and of posted notices. The trial court having had the witnesses before it, and who, at the request of the parties, visited and inspected the premises,

was, better than we are, in a position to ascertain the real truth of the matter. The lode claims admittedly were made to acquire the marble. Now, with the west ledge well defined as a continuous vein of marble, and with outcroppings and exposures of clear marble at divers places along that vein, as found by the court, it is hard to believe that any one in making locations to acquire marble would place them, not on that ledge, but to the east of it where confessedly there are no indications of desirable marble either in quantity or quality, or at least greatly inferior to that clearly indicated and contained in the west ledge. There is evidence to show that the Cederstroms, after they had located both the lode and the placer claims, in pointing them out to stockholders and to prospective purchasers of stock of the plaintiff corporation, pointed out and showed the deposits and outcroppings of the west ledge as the location of the property and holdings of the plaintiff.

As already indicated, the evidence as to about all of the material issues is in conflict. We think, however, all the findings are supported by sufficient evidence, and on the record and for the reasons stated we are satisfied the court on the facts reached the right result. At least we do not feel justified in disturbing them.

It is further contended that as to placer claim No. 3 the defendant is an innocent purchaser for value. It in this respect claims that it had no notice that the Cederstroms had agreed to make the placer locations for the benefit of the plaintiff, and that there is no evidence to show that at least two of the locators of that claim, Ellen and Dolly Cederstrom, had made such an agreement. There is no evidence that Ellen and Dolly Cederstrom made such an agreement; but they, with others, were locators of the lode claims, and with others conveyed them to the plaintiff. Though Oliver, Thor, and Cornelius Cederstrom denied it, yet there is evidence to show that they and Eiseman had agreed to locate the placer claims for the benefit of the plaintiff. They were the active participants in the making of such locations and controlled and directed the work in such par-

ticular. Neither Ellen nor Dolly Cederstrom appear to have been concerned in such transaction. They bore no part of the expenses of the locations, and neither contributed nor parted with anything, and apparently did not advise or direct the making of the locations, nor were they consulted with respect to them. They apparently were but volunteers, and their names, for mere convenience, were written in the notice by Oliver and Cornelius Cederstrom. The Cederstroms were the active and principal incorporators of the appellant. They held over three-fourths of the issued stock of that corporation. Accepting the findings of the court, as we do, that they, while directors of the plaintiff corporation, and for the purpose heretofore shown, had agreed to make the placer locations for its benefit, that they, in pursuance thereof, made the locations for such purpose, that the plaintiff paid the expenses thereof, and that they, while still directors of the plaintiff corporation, organized and became the principal stockholders of the defendant corporation, and conveyed and caused to be conveyed placer claim No. 3 to that corporation in violation of their agreement and in breach of trust with the plaintiff corporation, the defendant corporation, none of whose stockholders paid any substantial value for stock issued to them, can be regarded as but a convenient medium or cover to shield the Cederstroms from consequences of their breach. Under such circumstances the knowledge and notice of these incorporators constituted the knowledge and notice of the defendant corporation. *Simmons Creek Coal Co. v. Doran,* 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; *National Conduit Mfg. Co. v. Connecticut Pipe Mfg. Co.* (C. C.) 73 Fed 491.

We think the judgment should be affirmed, with costs. Such, therefore, is the order.

McCARTY, C. J., and FRICK, J., concur.